UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHE S.,

               Plaintiff,

  v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations

               Defendant.

Case No. 2:17-cv-01634-TLF

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of the Commissioner's denial of her application for supplement security income ("SSI") benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that the decision to deny benefits should be reversed and that this matter should be remanded to the Commissioner for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On April 16, 2012, plaintiff filed an application for SSI benefits, alleging she became disabled beginning March 30, 2000. Dkt. 8, Administrative Record (AR) 26. Plaintiff's application was denied on initial administrative review and on reconsideration. *Id.* A hearing was

held before an administrative law judge (ALJ) on October 7, 2013, at which plaintiff appeared and testified as did a lay witness and a vocational expert. AR 42-93.

In a decision dated October 25, 2013, the ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy at step five of the Commissioner's sequential disability evaluation process and therefore that she was not disabled at that step.[1] *Id.* at 26-36. Plaintiff's request for review was denied by the Appeals Council, which plaintiff then appealed to this Court. *Id.* at 1, 733. On January 27, 2016, the Court reversed the ALJ's decision and remanded the matter for further administrative proceedings. *Id.* at 736-46.

On remand, a hearing was held before a different ALJ on February 16, 2017.. *Id.* at 642-84. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since plaintiff's application date. *Id.* at 626. At step two, the ALJ found plaintiff had the following severe impairments: right carpal tunnel syndrome, status-post release; status-post right hip replacement; bipolar disorder; posttraumatic stress disorder ("PTSD"); and borderline personality disorder. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 627. The ALJ next considered plaintiff's RFC, finding at step four that she did not have any past relevant work, but that at step five she could perform other jobs existing in

---

[1] The Commissioner employs a five-step sequential disability evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.* Step one considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). Step two considers "the severity of the claimant's impairments. *Id.* If the claimant is found to have a severe impairment, step three considers "whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the claimant's residual functional capacity ("RFC") is considered at step four in determining whether the claimant can still do his or her past relevant work and, if necessary, at step five "make an adjustment to other work." *Id.*

significant numbers in the national economy, and therefore that she was not disabled at that step. AR 628-32.

The Appeals Council did not assume jurisdiction; plaintiff filed a second appeal of the ALJ's decision in this Court on November 2, 2017. Dkt. 1; 20 C.F.R. § 416.1481. Plaintiff argues the ALJ erred: (1) in evaluating the medical opinion evidence; and (2) in considering plaintiff's allegations concerning her impairments.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

"The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill,* 874 F.3d 634, 638 (9th Cir. 2017) (citation omitted). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). "Where there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn,* 495 F.3d at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports,

1  and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the
2  decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons
3  identified by the ALJ are considered in the scope of the Court's review. *Id.*

I.  <u>The ALJ's Evaluation of the Medical Opinion Evidence</u>

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *Garrison v. Colvin,* 759 F.3d 995, 1012-13 (9th Cir. 2014).. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Garrison,* 759 F.3d at 1012.

In late March 2012, William R. Wikinson, Ed.D., conducted a psychological evaluation of plaintiff, opining that "although fairly bright, she loses concentration and focus with any

sustained and pressured cognitive effort, which would lead to mistakes." AR 461. Dr. Wilkinson further opined that plaintiff "would not do well with coworkers or clientele," that she was "still a little too thin skinned to interact effectively with authority figures," and that this would "take a few more months for her to work through via her step work." AR 461.

Dr. Wilkinson saw plaintiff again in mid-March 2014, this time opining that "it would appear that the chronic, long lasting and multiple problems that she has would incapacitate her for some time, even with treatment and on medications." AR 8. Dr. Wilkinson also assessed plaintiff with moderate to marked limitations in a number of different areas of cognitive and social functioning. *Id.* at 9.

Dr. Shawn K. Kenderdine, Ph.D., evaluated plaintiff in October 2015 and found moderate to marked limitations in several areas of cognitive functioning. *Id.* at 987. Dr. Kenderdine conducted another evaluation of plaintiff in early August 2016, finding plaintiff to have moderate limitations in a number of cognitive and social functional areas, but no marked limitations. *Id.* at 997. In addition, in mid-August 2016, the Washington State Department of Health and Human Services determined that plaintiff was "unable to work at this time." *Id.* at 994.

The ALJ considered this evidence in the August 30, 2017 decision::

> I note that Dr. Wikinson and Dr. Kenderdine did not review any outside medical records. As explained above, the claimant's mental health treatment notes indicate that the claimant's mental health has been stable with treatment. Her mental status examinations also have shown stable functioning with good eye contact, psychomotor activity within normal limits, and an appropriate affect with euthymic mood. Furthermore, the treatment notes reflect that here [sic] cognitive functioning was intact. Despite the claimant's reports that she is unable to be around men, she spends time with her biological father and interacts appropriately with male providers. I also note that the claimant provided inconsistent statements to Dr. Kenderdine, which indicates that the claimant did not provide a full and accurate picture of her mental health.

*Id.* at 631.

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 5

The ALJ erred in rejecting this medical evidence. First, Dr. Wilkinson and Dr. Kenderdine each conducted more than one evaluation of plaintiff, and they were not required to consider any outside medical records – they were entitled to rely on their own clinical findings. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (where an examining physician's opinion is based on independent clinical findings, it is within the ALJ's discretion to disregard the conflicting opinion in another examining physician's diagnosis).

Second, plaintiff's mental health treatment notes reveal largely normal findings, including intact cognition and stability on current medications (AR 489, 495-97, 500, 522-24, 526, 528-31, 541-43, 546-49, 555-57, 560-61, 567-76, 578-81, 588-89, 595-98, 600-02, 1013-62, 1067-77), yet those notes do not contain any assessment of plaintiff's functional capabilities outside of the clinical setting. This is in contrast with Dr. Wilkinson and Dr. Kenderdine, who did make such assessments. AR 9, 461, 987, 997.

Third, as plaintiff did not mention to Dr. Wilkinson or Dr. Kenderdine that she had difficulty being around men. *See id.* at AR 7-12, 459-63, 985-90, 995-99. It was her step-father and her partners – not her biological father – who abused her. AR 421, 424, 427, 460, 486, 489, 500, 550, 560, 655, 995. Plaintiff's interaction with male treatment providers – in what are likely safe and fairly brief encounters – is not necessarily inconsistent with her reported difficulties.

Nor does the ALJ address the findings of Dr. Wilkinson and Dr. Kenderdine, which contain some abnormal signs and symptoms (*id.* at AR 10-11, 459, 462-63, 988-90, 998-99). And the ALJ fails to give sufficient consideration to Dr. Wilkinson's and Dr. Kenderdine's comprehensive evaluations of plaintiff. As the United States Court of Appeals has emphasized:

> "The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology...." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)). Psychiatric evaluations may appear subjective,

especially compared to evaluation in other medical fields. Diagnoses will
always depend in part on the patient's self-report, as well as on the clinician's
observations of the patient. But such is the nature of psychiatry. *See Poulin*,
817 F.2d at 873 ("[U]nlike a broken arm, a mind cannot be x-rayed.").Thus,
the rule allowing an ALJ to reject opinions based on self-reports does not
apply in the same manner to opinions regarding mental illness.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The ALJ's reliance on plaintiff's purported inconsistent statements and self-reporting to reject the opinions of Dr. Wilkinson and Dr. Kinderdine (discussed immediately below) is another point on which the ALJ erred in discounting these medical opinions.

Fourth, the ALJ points to some allegedly inconsistent statements made by plaintiff to Dr. Kenderline. But these statements do not indicate plaintiff failed to provide an accurate picture of her health to Dr. Kenderdine. The specific statements the ALJ refers to are:

[D]uring one examination she reported having special education in the 3rd
grade. Then during another she said she had no history of special education.
She said that she grocery shopped independently the [sic] later said that she
only shopped with her mother. The claimant reported that she was capable of
public transportation then later reported she did not use the bus[.]

AR 629-30. These statements, however, were made some 10 months apart (*Id.* at 985-86, 995-96), and thus, at least in regard to the grocery shopping and use of public transportation, the discrepancy could simply be due to changed circumstances. And although the same cannot be said for the statements concerning plaintiff's history of special education, this one inconsistency is not enough to justify the wholesale rejection of the opinions of two examining psychologists. *See Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) ("A single discrepancy fails . . . to justify the wholesale dismissal of a claimant's testimony.").

II.     The ALJ's Consideration of Plaintiff's Allegations

To reject a claimant's testimony regarding self-reported symptoms, the ALJ must provide clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ

must state what testimony he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Individuals do not all experience the same condition in exactly the same way, and different individuals may be more or less limited by symptoms than other individuals. SSR 16-3p, 2016 WL 1119029 at *4.

When gauging a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Garrison v. Colvin,* 759 F.3d 995, 1014-15 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific, clear, and convincing reasons for rejecting the claimant's testimony. *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ in this case offered several reasons for not finding wholly credible plaintiff's statements concerning her symptoms and limitations. The Court, however, agrees with plaintiff that those reasons were insufficient, and the ALJ's credibility determination is not supported by substantial evidence.

First, the ALJ found plaintiff was stable on medication. AR 629. The ALJ also found plaintiff's statements were inconsistent with the medical evidence in the record. *Id.* A determination that a claimant's testimony is not supported by medical evidence can satisfy the clear and convincing standard. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But as discussed above, the ALJ erred in evaluating the medical evidence in the record, and therefore it was error to rely on that evidence to discount plaintiff's credibility.

In addition, a claimant's testimony cannot be rejected solely on the basis that it is not supported by the objective medical evidence. *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). None of the other reasons the ALJ offered, though, are supported by substantial evidence and thus were improper as well.

For example, the ALJ relied on the supposedly inconsistent statements plaintiff made to Dr. Kenderdine regarding her history of special education, grocery shopping, and use of public transportation. AR 629-30. As explained above, the ALJ failed to show that those statements establish sufficient inconsistency to reject Dr. Kenderdine's opinions. For the same reasons, they also are insufficient to reject plaintiff's credibility.

The ALJ also pointed to purported discrepancies between plaintiff's reported difficulties being around men and the fact that she lives with her biological father who physically abused her during childhood, and that she could interact appropriately with male treatment providers. AR 630. But again as discussed above it was not plaintiff's biological father who abused her, and the mere fact that she can interact – likely for brief periods of time and in safe environments – with male treatment providers, does not necessarily show any discrepancies with her self-reporting.

The ALJ noted as well a Cooperative Disability Investigations Unit ("CDIU") report, in which plaintiff was reported to make good eye contact and appeared to be very relaxed during an interview with a male law enforcement officer. AR 630, 1130. As plaintiff points out, though, this was a fairly short encounter with a law enforcement officer, and plaintiff also was noted to appear to be lethargic, did not seem to be happy, and seemed uninterested in and did not smile or laugh during the course of the conversation. *Id.* at 1133.

Another reason the ALJ gave for discounting plaintiff's statements was that she "helped care for her mother, for at least a year," which the ALJ found suggested that she could "adhere to

simple tasks within a schedule, adapt to unpredictable changes, and plan independently." *Id.* at 629 (noting further that plaintiff reported in October 2014 that she was helping to care for her mother, who was recovering from surgery, and that she continued to care for her mother until at least September 2015).

A claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7; *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The record gives no indication, however, as to what plaintiff did in terms of taking care of her mother. *See* AR 986. 1015; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Lastly, the ALJ discounted plaintiff's credibility concerning her statements on the basis of Dr. Kenderdine's comment that "[w]ork is not a priority for her and she hopes to obtain SSI." AR 630, 986. The ALJ found this "suggests a motivation for exaggeration of symptoms." *Id.* at 630. But the record does not clearly show that this indication in October 2015, of work not being a priority reflects a motivation to exaggerate as opposed to a function of plaintiff's underlying impairments. For example, plaintiff also reported at the time that she has no long-term goals "as that makes her too anxious." AR 985. Further, Dr. Kenderdine did not indicate that work was not a priority for plaintiff when he saw her again a year later. *Id.* at 996.

## CONCLUSION

The ALJ found plaintiff had the residual functional capacity to perform other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process. AR 631-32. However, as discussed above, the ALJ erred in evaluating the

medical evidence in the record, in rejecting plaintiff's testimony, and in rejecting the statements of plaintiff's husband. The ALJ's RFC assessment, and thus his step five determination, are not supported by substantial evidence and cannot be upheld.

Accordingly, the Court finds the ALJ improperly determined plaintiff to be not disabled at step five. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED to the Commissioner for further administrative proceedings in accordance with the findings herein.

Dated this 15th day of November, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge